## Case No. 1,952.

### BROOKS v. The D. W. LENOX.

[35 Leg. Int. 404; 1 N. J. Law J. 228.][1]

District Court, D. New Jersey. July 18, 1878.

#### COLLISION—TOW AND SAIL.

1. Although "steering and sailing rules" 20 and 22 [Rev. St. 818, c. 5, § 4233] require all steamships to keep out of the way of sailing vessels, and all following or pursuing vessels to avoid those in advance of them, yet there are correlative obligations on the part of sailing vessels and vessels ahead.

[1] [Reprinted from 35 Leg. Int. 404, by permission. 1 N. J. Law J. 228, contains only a partial report.]

2. It is the duty of a sailing vessel ordinarily to keep her course in reference to a steamer, the latter being under more self-control, and less subject to the winds and tides; but when an adherence to the rule necessarily resulted in a collision, and a change would probably avert it, the change ought to have been made.

[Libel in rem for damages caused by collision. Decree for libellant.]

Alexander P. Colesberry, for libellant.

E. Hunn, Jr., E. Mercer Shreve, and J. Warren Coulston, for respondent.

NIXON, District Judge. The original libel was filed by John Brooks, as master and owner of the barge Archipelago, against the tug-boat D. W. Lenox, to recover damages for a collision.

The statement of the libel as first filed was, that on the 25th of April, 1877, the barge Archipelago was being towed up the Delaware river, on a voyage from Castleton, Maryland, to Trenton, New Jersey, with a cargo of flint stone; that she was lashed to the starboard side of the steam-tug D. W. Lenox, and when about three miles below New Castle she was run into and sunk by the schooner May Morn, and the sole allegation was, that the collision was caused by the joint fault of those in charge of the tug D. W. Lenox and those in charge of the schooner May Morn, by allowing the said vessels to approach too near each other. The proofs taken did not sustain such a vague allegation, and leave was given the libellant to amend his libel. The amendment was made by adding the following specific charge: That the sinking of the libellant's barge, the Archipelago, was caused by the fault and neglect and want of skill of the tug-boat D. W. Lenox; that the libellant contracted with the tug-boat to tow him directly to Philadelphia; that the proper course of said tug was to have proceeded directly up the western side of the western channel of the river Delaware; that instead of so doing, the captain of said tug steamed over to the eastern side of the said channel, with the hope and for the purpose of getting the schooner May Morn to tow; that by reason of the tug deviating from her proper course, she placed herself in such a position that a collision occurred with the schooner May Morn, by which libellant's barge was sunk; and that the said tug-boat, having contracted with the said barge for a specific compensation, became the servant of the said barge, and is liable for all loss occurring by reason of negligence or want of skill in the performance of said contract.

To the amended libel the claimant, James F. Wood, owner of the tug-boat Lenox, has filed a new answer, denying that the agreement was to tow the barge directly to Philadelphia, or that the tug went out of her proper course in performing the service, or that the collision was occasioned by the neglect or want of skill or care on the part of the tug-boat.

It would serve no useful purpose to recapitulate the conflicting testimony, or to state at large the reasons for my opinion in the case. It is sufficient to say, that it clearly appears, that the libellant has lost his barge, without any fault or neglect on his part, and that he is entitled to compensation in damages from somebody, unless the loss arose from inevitable accident. The barge was helpless, and subject to the movements of the steam-tug, and the tug, being controlled by steam, and being the pursuing or following vessel, is prima facie liable for all the injury of the collision, unless the schooner produced or contributed to the disaster by negligence and want of seamanship and skill in her management. The law casts the burden of proof upon the steam-tug, and if it has not been satisfactorily demonstrated in the evidence that she was guiltless, she must accept the responsibility for the loss.

In the amended libel the libellant charges that the steam-tug, after contracting with the barge to tow her to Philadelphia, went out of her direct course, with the hope and for the purpose of getting the schooner to tow, and the testimony strongly tends to sustain the allegation. It was not unlawful for him to take an additional tow; but his first duty was to the barge, and if any injury arose to her, from his attempt to procure another tow, he is responsible for the consequences. His examination shows that he is an intelligent and competent master; but it is to be feared that in his desire to increase the profits of his trip, by taking an additional vessel, he lost sight of the necessary and proper precautions to guard from danger the one he had in hand. He exhibited knowledge and judgment in the management of the tug after the emergency came, but his fault was in placing his boat in the position which created the emergency. It was his duty to have shaped his course so as to avoid all risk before the vessels were so near each other as to make the danger of a collision imminent. But although "steering and sailing rules" 20 and 22 require all steamships to keep out of the way of sailing vessels, and all following or pursuing vessels to avoid those in advance of them, yet there are correlative obligations on the part of sailing vessels and vessels ahead. All rules of navigation have their exceptions. They are adopted to prevent collisions, and when a collision is inevitable by adhering to them, each vessel is not only bound to depart from the rules, but to adopt such different methods as will tend to avoid the disaster. Such an emergency arose in the present case. It is the duty of a sailing vessel ordinarily to keep her course in reference to a steamer, the latter being under more self-control, and less subject to the winds and tides; but

when an adherence to the rule necessarily resulted in a collision, and a change would probably avert it, the change ought to have been made. The real trouble arose doubtless from a miscalculation, as the witness Hager states, of the master of the tug and the captain of the schooner as well. The former thought that the latter was intending to cross the Bulk Head shoals into the eastern channel, and the latter thought that the tug would keep up her speed and cross the bows of the schooner. It is not clear from the evidence that either of these risks ought to have been taken by either party. The captain of the schooner was not called upon at that stage of the tide to further beat out his larboard tack, in view of the possibility of grounding, nor should the master of the steam-tug subject his vessel to all the consequences of failure by attempting to cross the schooner's bow. But as soon as they discovered their error, and that danger was threatening and immediate, if the captain of the schooner had acted with the promptitude and skill of the master of the tug, the disastrous results would probably have been averted. The engine of the tug was at once stopped and reversed, and the headway of the steamer stopped. I am strongly of the opinion, that if the captain of the schooner had as promptly ported his helm and let his jibs run, his vessel would have come up into the wind, and the extent of the injury to the barge, if any, would only have been a glancing blow from the port side of the schooner. Instead of this, the evidence is quite satisfactory that, after he had gone about, and got his vessel on her starboard tack, he put his wheel in the starboard becket, left his helm, and gave no order to let his jibs go until it was too late to avoid the collision.

I think, therefore, that the schooner contributed to the accident, and that the tug and schooner, being both in fault, the damages should be equally divided. The theory which the witnesses for the schooner sought to maintain, that the tug and barge ran into the schooner, is not supported by the facts of the case. When a collision occurs, as here, by the stem of a sailing vessel striking the side of a barge lashed to a steam tug, and with such force as to split open a new and staunchly built vessel, and cause her to sink in a few minutes, it is not difficult to ascertain which vessel ran into the other. To affirm that the sailing vessel was nearly, if not quite, stationary, and that the barge ran into her, is an appeal to human credulity, which ought not to be attempted in an intelligent court.

There must be an interlocutory decree in favor of the libellant, and a reference to ascertain the amount of the damages. On the coming in of the commissioners' report and a confirmation there will be a final decree entered against the respondents for one-half of the damages ascertained, with costs.